IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ZODIAC SEATS US LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § Civil Action No.: 4:17-cv-00410-ALM-KPJ |
| SYNERGY AEROSPACE CORPORATION, | § |
| | § |
| Defendant. | § |

## MEMORANUM AND OPINION

Presently before the Court are two issues: (1) whether the United Nations Convention on Contracts for the International Sale of Goods ("CISG") applies to a breach of contract and warranty dispute between Plaintiff Zodiac Seats US LLC ("Zodiac") and Defendant Synergy Aerospace Corporation ("Synergy"); and (2) if the CISG applies, whether the CISG precludes recovery of attorneys' fees. *See* Dkts. 66, 67, 68, 69. For the limited purpose of determining these issues of law, the parties consented to proceed before the undersigned United States Magistrate Judge. *See* Dkts. 66, 67. The determination of these limited issues was subsequently referred to the undersigned Magistrate Judge. *See* Dkt. 68.

Upon review of the entire docket, including the updated briefing and exhibits submitted in this matter, the Court finds the CISG controls the parties' dispute. The Court further finds the CISG does not preclude recovery of attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

### I. BACKGROUND

Zodiac and Synergy entered into a series of agreements wherein Zodiac agreed to manufacture commercial airplane seats, both for tourist and business class passengers, for use in

Airbus airplanes manufactured for use by Synergy. Both parties argue that the purchase orders, which acted as contracts between the parties, were breached. Generally, Zodiac asserts that Synergy breached because Zodiac never received full payment for the products manufactured and delivered. Generally, Synergy asserts that Zodiac breached because the seats were delivered both late and with product defects and, as a result, Synergy asserts counterclaims for breach of contract and breach of express and implied warranties. Both parties assert a claim for attorneys' fees. *See* Dkt. 6 at 9; Dkt. 23 at 6.

Zodiac is an American business based in Texas. Synergy is a South American conglomerate which operates in Colombia and Brazil, among other locations. The contracts at issue fail to specify whether the CISG governs their terms and whether a party asserting breach thereof can recover attorneys' fees.

Synergy filed a partial motion for summary judgment (Dkt. 40) arguing: (1) the CISG applies and pre-empts Texas state contract law; and (2) under the CISG, Zodiac may not collect attorneys' fees. *See* Dkt. 40 at 4–6. Zodiac filed a response (Dkt. 49), and Synergy filed a reply (Dkt. 54). The Court held oral arguments on the motion on January 15, 2019. *See* Dkt. 64. The undersigned issued a Report and Recommendation, recommending that Synergy's partial motion for summary judgment be denied because there existed a genuine issue of material fact regarding Synergy's "place of business." *See* Dkt. 69. The district court issued a Memorandum Adopting the Report (Dkt. 79) and denying Synergy's partial motion for summary judgment. The parties consented to proceed before the undersigned on the limited issues of determining conflict of law and whether the CISG precludes recovery of attorneys' fees in this case. *See* Dkts. 66, 67, 68. The Court issued a briefing schedule on the issues, as agreed upon by the parties. *See* Dkt. 68. Synergy

filed a brief with exhibits (Dkt. 72), Zodiac filed a response with exhibits (Dkt. 73), and Synergy filed a reply (Dkt. 75).

Synergy argues that the CISG controls the law in this case because its "place of business" is located in Colombia for the purpose of the Zodiac contracts. *See* Dkt. 72 at 2. Additionally, Synergy asserts that Zodiac cannot bring a claim for attorneys' fees because the damages provision of the CISG does not include attorneys' fees in its definition of "loss." *See* Dkt. 72 at 4. Zodiac argues that Synergy, a business with multiple locations, is not based in Colombia for purposes of this contract, but rather is based in Brazil. *See* Dkt. 73 at 1. Additionally, Zodiac argues that even if the CISG applies, it can still recover attorneys' fees, as they were sought pursuant to a Texas state statute, not the damages provision of the CISG. *See* Dkt. 73 at 3.

## II. ANALYSIS

The CISG was ratified by the United States Senate in 1986. United Nations Convention on Contracts for the International Sale of Goods, *opened for signature* Apr. 11, 1980, 19 I.L.M. 668; *see also BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador,* 332 F.3d 333, 336 (5th Cir. 2003). The CISG "creates a private right of action in federal court" and "applies to 'contracts of sale of goods between parties whose places of business are in different States . . . [w]hen the States are Contracting States.'" *Id.* (quoting the CISG art. 1(1)(a)). "As incorporated federal law, the CISG governs [any dispute arising out of contracts for sales of goods between member states] so long as the parties have not elected to exclude its application." *BP Oil*, 332 F.3d at 336 (requiring parties to show a clear intent to affirmatively opt-out of the CISG).[1] An intent to preempt state law has been found in the introductory text of the CISG, which states that "the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different

---
[1] Where the CISG applies, courts also have federal subject-matter jurisdiction. *BP Oil*, 332 F.3d at 336.

social, economic[,] and legal systems would contribute to the removal of legal barriers in international trade and promote the development of international trade." *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 551 (S.D. Tex. 2015) (quoting *Asante Technologies, Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1151–52 (N.D. Cal. 2001)) (internal punctuation omitted).

### A. APPLICATION OF THE CISG

The parties do not dispute that the contracts at issue were for the sale of goods, in the form of commercial airline seats. The contracts are silent, however, as to the applicability of the CISG. As an American business, Zodiac is bound by the terms of the CISG if it contracts with a party whose "place of business" is in a country that is a signatory to the CISG at the time the contract was signed. Thus, to determine whether the CISG applies to the disputed contracts, the Court must determine Synergy's "place of business" with the closest relationship to the contracts.

Synergy argues that it is based in Colombia, while Zodiac argues Synergy is based in Brazil. *See* Dkt. 40 at 4; Dkt. 49 at 6–7. Colombia adopted the CISG in 1999, and reaffirmed it in 2000. *See* Corte Constitucional [CONSTITUTION] May 10, 2000 (Colum.); *see also* U.N. General Assembly, *United Nations Commission on International Trade Law: Case Law on UNCITRAL TEXTS (Clout)*, 4, U.N. Doc. A/CN.9/SER.C/ABSTRACTS/123 (Sep. 26, 2012). Brazil entered the CISG in 2014, *after* the formation of the contracts (e.g., purchase orders) at issue. *See* Juan Antonio Gaviria-Gil, *The Puzzle of the Lack of Colombian Cases on the CISG*, 26 INTERNATIONAL LAW, *Revista Colombiana de Derecho Internacional*, 289, 301 (2015); *see also* Dkt. 6 at 4–5. Thus, for the CISG to apply, Synergy must establish that its place of business with regard to the contracts at issue was in Colombia.

Article 10 of the CISG provides, "[I]f a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance, having regard to the circumstances known to or contemplated by the parties at any time or at the conclusion of the contract." CISG art. 10. In weighing which location has the closest relationship to the contract, courts consider *where* the communications about the contract or representations about the product originated.[2] *See McDowell Valley Vineyards, Inc. v. Sabate USA Inc.*, 2005 WL 2893848, at *3 (N.D. Cal. Nov. 2, 2005) (holding the CISG does not apply where most communications emanated from the United States, thus under the CISG, the parties were both American, not from different member states); *Asante Technologies, Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1149 (N.D. Cal. 2001) (Finding the "place of business" to be Canada where "most if not all of the defendant's representations regarding the technical specifications of the products emanated from Canada.").

At issue in this case is not just from *where* communications emanated, but also *when* those communications were sent. Scholars interpreting the CISG explain that when Article 10 "refers to the performance of the contract, it is referring to the performance that the parties contemplated when they were entering into the contract." *Guide to CISG Article 10, Secretariat Commentary*, *available at* PACE LAW SCHOOL INSTITUTE OF INTERNATIONAL COMMERCIAL LAW, "Place of Business, subparagraph (a)," http://www.cisg.law.pace.edu/cisg/text/secomm/secomm-10.html (last updated Aug. 29, 2006).[3] Moreover, "[t]he phrase 'the contract and its performance' refers to the transaction as a whole, including factors relating to the offer and acceptance[,] as well as the

---

[2] Where, for example, the parties know that the contract being negotiated and concluded in State A is to be performed in State B, where the seller has another place of business, the text of Article 10 does not give any indication as to which criteria should prevail in determining the place of business. Internationality and Private International Law, 4 INTERNATIONAL CONTRACT MANUAL § 84:7 (citing Bianca-Bonell Commentary on Int'l Sales Law, Guiffre: Millan (1987), *available at* http://www.cisg.law.pace.edu/cisg/biblio/preamble-bb.html).
[3] This commentary is to the original 1978 text of the CISG which has since been renumbered; however, the text of the Article remains the same.

5

performance of the contract. The location of the head office or principal place of business is irrelevant for the purposes of [A]rticle 9 and [A]rticle 10 unless [that location] has the closest relationship to the contract and its performance." Secretariat Commentary on Article 9, Article 10 regarding 1978 Draft, CISG, *available at* https://cisgw3.law.pace.edu/cisg/text/secomm/secomm-10.html. Thus, the Court must consider from where Synergy's communications with Zodiac regarding entering into the contract emanated.

In this case, the parties did not execute a single contract covering all goods ordered and delivered. While the parties negotiated and edited a comprehensive contract, it was never signed or adopted by the parties. *See* Dkt. 73-1. Thus, the contracts asserted in this case are in fact a series of purchase orders, executed between February 20, 2013, and December 2, 2013. Dkt. 6 at 5–7. Moreover, Synergy asserts that during the performance of the purchase orders, new agreements were formed and novation occurred. Dkt. 23 at 4. Accordingly, because there is no single contract, the Court considers the parties' communications prior to the execution of each purchase order and throughout the duration of the alleged novation, reviewed collectively, to determine from where Synergy's communications regarding the purchase orders emanated.

The execution of the purchase orders, once formed, required ongoing contact by both parties with Brazil for the limited purpose of billing and payment. Synergy utilized a location in Brazil to process all international treasury processing, including the billing related to its relationship with Zodiac. *See* Dkt. 72-1 at 3. Additionally, the parties met one time in Brazil, a location which was chosen to accommodate the schedule of Synergy's owner, German Efromovich.[4] *See* Dkt. 72-1 at 3.

---

[4] The parties do not clarify what role, if any, German Efromovich held in the negotiations of the contract. Nor do the parties state when the Brazil meeting took place, or if it was related to the dispute presently before the Court. "The location of the head office or principal place of business is irrelevant" for determining Synergy's principal place of business. *See* 4 INTERNATIONAL CONTRACT MANUAL § 84:7 (internal quotations and citations omitted).

6

The parties also contemplated that the contracts may trigger tax consequences in Brazil. An unadopted draft contract between the parties refers to the seller's tax obligations, and states that the seller shall pay any and all taxes imposed by governmental authorities "outside the United States, the location of Airbus final assembly, the Republic of Brazil, or any other sovereign state/territory where the aircrafts might be operated by the Buyer or any of its related companies ~~or El Salvador~~[.]"[5] *See* Dkt. 73-1 at 18.

On the other hand, Synergy's employees who worked on the formation of the Zodiac purchase orders, and had ongoing communications with Zodiac, worked and resided in Colombia. For example, Synergy's Chief Operating Officer, Michael Welch, who managed the Zodiac relationship, resided in Colombia and worked from Colombia at all points relevant to his contacts with Zodiac. *See* Dkt. 72-1 at 2. Emails regarding the negotiation of the unadopted draft contract were sent by an individual named German Escovar Alvarez, based in Colombia. *See* Dkt. 72-1 at 3; Dkt. 73-1 at 1. Additionally, Synergy's employees and subcontractors on the Zodiac contract were all based in Colombia. *See* Dkt. 72-1 at 2–3.

Further, the ongoing contractual performance, and alleged novation, occurred in Colombia. The parties met multiple times in Bogota, Colombia. *See* Dkt. 72-1 at 3. These meetings included the July 26, 2016, visit, wherein Zodiac made a presentation regarding ongoing unresolved issues between the parties. *Id*. This presentation in Bogota included discussion of the "Commitment Letters" by Zodiac, which addressed delayed delivery schedules and plans to address product defects. *See id*.

---

[5] The unadopted draft contract is heavily edited, apparently by several entities based on multiple color-coded edits, comments, and responses. The language "or El Salvador" is struck through in the unadopted draft. *See* Dkt. 73-1 at 18.

Based upon a review of all evidence submitted in this matter, the Court finds that Synergy's employees involved in the initial negotiation of the contracts at issue were based in Colombia. Moreover, the ongoing renegotiation, and alleged novation pursuant to the Commitment Letters, occurred during a July 26, 2016, visit by Zodiac to Synergy's location in Colombia. Accordingly, both at the time the contracts were formed, and throughout the performance of the contract, the Court finds that as between Brazil and Columbia, Colombia had the "closest relationship to the contract and its performance." Therefore, the Court finds that the CISG governs the parties' dispute.

### B. ATTORNEYS' FEES UNDER THE CISG

Both Zodiac and Synergy assert a claim for attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code. *See* Dkt. 6 at 9. Under the statute, a "person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001. In Texas, a party seeking attorneys' fees in a breach of contract suit must be the "prevailing party" at trial and receive a finding on damages. *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655–56 (Tex. 2009) (collecting cases) (noting that a finding of breach of contract is insufficient in the absence of an award of damages). The amount of attorneys' fees is a question of fact for the factfinder. *Ogu v. C.I.A. Servs. Inc.*, 2009 WL 41462, at *3 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.).

The question before the Court is whether the CISG prevents a prevailing party on the breach of contract claims from recovering attorneys' fees pursuant to the Texas Civil Practice and Remedies Code.

1. Impact of *Zapata*

Only one circuit court has addressed the recovery of attorneys' fees in a case involving the CISG, in *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385 (7th Cir. 2002). In *Zapata*, the plaintiff sought recovery of attorneys' fees pursuant to Article 74 of the CISG, which addresses recoverable damages. *See id.* at 388. Article 74 provides that "damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach," provided the consequence was foreseeable at the time the contract was made. *Id.* at 388. In *Zapata*, the Seventh Circuit found that "[t]here is no suggestion in the background of the Convention or the cases under it that 'loss' was intended to include attorneys' fees, but no suggestion to the contrary either." *Id.* After review of the potentially inconsistent and contradictory results if some countries allowed attorneys' fees under the CISG while others did not, the Seventh Circuit "conclude[d] that 'loss' in Article 74 does not include attorneys' fees[.]" *Id.* at 389.

In review of the claims presented here, *Zapata* does not apply. Neither party asserts a claim for attorneys' fees under the CISG. *See* Dkt. 6 at 9; Dkt. 73 at 5. Because both parties seek attorneys' fees pursuant to the Texas Civil Practice and Remedies Code, the Court will not expand the holding in *Zapata* beyond the facts presented to the Seventh Circuit.

2. Other Non-Binding Precedent

Neither the Fifth Circuit nor any district court in the Fifth Circuit has addressed the issue of attorneys' fees in the CISG context, either arising under the CISG or arising under a state statute. Other district courts outside the Fifth Circuit, however, have addressed the applicability of state attorneys' fees statutes to cases arising under the CISG. *See Granjas Aquanova S.A. de C.V. v. House Mfg. Co.*, 2010 WL 4809342, at *2 (E.D. Ark. Nov. 19, 2010); *Pupille v. Nickolas Imports,*

9

*LLC*, 2013 WL 2152633, at *1 (E.D. Va. May 15, 2013); *Victory Foodservice Dist. Corp. v. N. Chr. Laitsos & Co. Ltd.*, 2017 WL 5256762 (S.D.N.Y. Nov. 13, 2017) ("Absent any statutory authority from which attorneys' fees may be requested, courts have held that attorneys' fees are an issue outside the substantive law of contracts governed by the CISG. Instead, they are left open to domestic law and the rules governing choice of law in international disputes. In the United States, that means attorneys' fees are governed by the law of the forum state[.]") (internal citations omitted).[6] In these cases, the courts analyzed whether the CISG preempted any applicable attorneys' fees statutes and applied traditional conflict of law analysis to determine the outcome.

In *Granjas*, the court granted attorneys' fees in CISG litigation where the plaintiff sought redress under an Arkansas state law, wherein "a court may award reasonable fees to the successful party in a breach of contract case." *Granjas Aquanova S.A. de C.V. v. House Mfg. Co.*, 2010 WL 4809342, at *2 (E.D. Ark. Nov. 19, 2010). The Court found that "*Zapata* fell short of holding that a party is precluded from ever recovering attorneys' fees in CISG litigation; it simply held that attorneys' fees are not covered by Article 74." *Id*. Further, the *Granjas* court found that attorneys' fees are a "procedural matter governed by choice of law rules in international legal disputes, and those rules point to domestic law." *Id*. (citing *Zapata*, 313 F.3d at 388; CIGS Article 7(2)). As such, the *Granjas* court granted attorneys' fees proportional to the attorneys' hours worked on the breach of contract claim. *See Granjas*, 2010 WL 4809342, at *2–3.

Other district courts that have denied attorneys' fees followed a similar analysis. In those cases, the courts turned to conflict of law analysis to determine whether attorneys' fees were recoverable under the law of the forum. *See, for example*, *Victory Foodservice*, 2017 WL 5256762, at *2; *Pupille*, 2013 WL 2152633, at *1; *San Lucio, S.r.l. v. Import & Storage Services, LLC*, 2009

---

[6] *See also Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, 2014 WL 2169769, at *10 (E.D.N.Y. May 23, 2014) (denying attorneys' fees where they were not mentioned in the emails which formed the agreement).

10

WL 1010981, at *3–4 (D.N.J. Apr. 15, 2009) (The court determined each party was responsible for its own legal fees because the foreign litigant "was aware that its product was being sold into the U.S. and should have anticipated use of U.S. law in the event of a dispute."). Where attorneys' fees were denied, it was because the forum state's laws did not provide attorneys' fees to the victor in breach of contract cases. *See Victory Foodservices*, 2017 WL 55256762, at *2 ("Under New York law, it is well settled that absent a statute or contractual provision, attorneys' fees and the legal expenses necessarily incurred in carrying on a lawsuit are not generally considered items of expense recoverable as general or special damages.").

Because Zodiac does not assert a claim for attorneys' fees under the CISG, but rather under a distinct state statute, the Court finds the reasoning in this line of cases persuasive. The Court therefore turns to preemption analysis to determine whether Zodiac may recover attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

3. Preemption

As a treaty to which the United States is a signatory, the CISG preempts inconsistent provisions of state law where it applies. *See Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 551 (S.D. Tex. 2015); *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 673 (N.D. Ill. 2005). Conversely, state law causes of action that fall outside the scope of federal law will not be preempted. *Caterpillar*, 393 F. Supp. 2d at 673; *see also Electrocraft Arkansas, Inc. v. Super Electric Motors, Ltd.*, 2009 WL 5181854, at *5, 7 (E.D. Ark. Dec. 23, 2009) (holding that state tort claims which are "in essence" a contract claim are preempted, but those with an independent cause of harm, like misrepresentation, fraud, and intentional harm to economic interests, are not preempted); *Citgo Petroleum Corp. v. Odfjell Seachem*, 2013 WL 2289951, at *4–5 (S.D. Tex. May 23, 2013) (holding that where plaintiff asserted a general breach of contract

11

claim it was incorporated under the CISG as a claim pursuant to the treaty). Thus, the CISG preempts a claim for attorneys' fees only if such claims fall within the scope of the CISG. *Electrocraft Arkansas*, 2009 WL 5181854, at *4 (citing *Asante Technologies*, 164 F. Supp. 2d at 1151–52; *Miami Valley Paper, LLC v. Lebbing Engineering & Consulting GmbH*, 2006 WL 2924779, at *3 (S.D. Ohio Oct. 10, 2006)).

Attorneys' fees are not recoverable damages under the CISG. *Zapata*, 313 F.3d at 388–89. Therefore, the Texas state statute is only preempted if it is included in the same type of damages provision as the "loss" provision of the CISG. *See* CISG, art. 74. It is not. The Texas statute allows for recovery of attorneys' fees only in specific, narrow categories of claims, and is in addition to traditional breach of contract recovery. Accordingly, the Texas statute is not of the same category of damages as those provided for under the CISG. Hence, upon review, Chapter 38 of the Texas Civil Practice and Remedies Code is not a provision of a general damage or loss statute, and the Court finds it is not preempted by the CISG.

    4. Conflict of Laws

Given the limited guidance under CISG-related case law on attorneys' fees, the Court also examined the posture in which courts have addressed other contract terms outside the scope of the CISG. Courts addressing contract terms outside the express terms of the CISG also applied the forum's conflict of law rules. *See Norfolk So. Ry. Co. v. Power Source Supply, Inc.*, 2008 WL 2884102, at *5 (W.D. Pa. July 25, 2008) (citing *Geneva Pharm. Tech. Corp. v. BarrL abs.*, 201 F. Supp. 2d 236, 282–83 (S.D.N.Y. 2002), *rev'd on other grounds*, 386 F.3d 485 (2d Cir. 2004); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12–13 (2d Cir. 1996)); *see also Jae Yeon Textile Inc. v. AKM Textile Inc.*, 2017 WL 7156244, at *6 (C.D. Cal. Nov. 27, 2017) (because the

CISG does not provide a prejudgment interest rate the court used its discretion to apply the California default rate).

The outcome set forth above is consistent with both the law of Texas and Colombia. *See SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.) ("[W]e should first determine if the laws are in conflict. If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question."). Were this case brought pursuant to Colombian law, Colombia follows the so-called English rule, in which attorneys' fees are automatically awarded to the prevailing party. Manuel A. Gómez, *Like Migratory Birds: Latin American Claimants in U.S. Courts and the Ford-Firestone Rollover Litigation*, 11 SW. J.L. & TRADE AM. 281, 300 (2005) (quoting CÓD. PROC. CIV. art. 389 (Col. 1970)). Thus, the law of Texas and Colombia are not in conflict.

### III. CONCLUSION

Upon review of the entire record, including the briefing submitted regarding applicability of the CISG, the Court makes the following findings:

(1) Synergy's "place of business" for the purposes of determining if the CISG applies is Colombia;

(2) Because Synergy's place of business is Colombia, the CISG applies in this case;

(3) Chapter 38.001 of the Texas Civil Practice and Remedies Code is not preempted by the CISG; and

(4) Any party prevailing on a breach of contract claim may recover attorneys' fees if it is awarded attorneys' fees by the fact finder.

**IT IS SO ORDERED**.

**SIGNED this 23rd day of April, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE